NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
KEITH M. STAUB (Cal. Bar No. 137909)
CHUNG H. HAN (Cal. Bar No. 191757)
JASMIN YANG (Cal. Bar No. 255254)
DAMON A. THAYER (Cal. Bar No. 258821)
PAUL B. GREEN (Cal. Bar No. 300847)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-7423
     Facsimile: (213) 894-7819
     E-mail: Keith.Staub@usdoj.gov
          Chung.Han@usdoj.gov
          Jasmin.Yang@usdoj.gov
          Damon.Thayer@usdoj.gov
          Paul.Green@usdoj.gov

Attorneys for Respondents
Felicia L. Ponce and Michael Carvajal

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LANCE AARON WILSON; MAURICE SMITH; EDGAR VASQUEZ, individually and on behalf of all others similarly situated,<br><br>        Plaintiff-Petitioners,<br><br>        v.<br><br>FELICIA L. PONCE, in her capacity as Warden of Terminal Island; and MICHAEL CARVAJAL, in his capacity as Director of the Bureau of Prisons,<br><br>        Defendant-Respondents. | No. CV 20-4451-MWF-MRW<br><br>**RESPONDENTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br>[Declaration of Todd Javernick, filed concurrently herewith]<br><br>Honorable Michael W. Fitzgerald United States District Judge |

1

2

TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.      INTRODUCTION ........................................................................................... 1

II.     ARGUMENT ................................................................................................... 4

        A.      Petitioners Cannot Meet the Eighth Amendment Standard of
                Deliberate Indifference ...................................................................... 4

                1.      COVID-19 Infections and Limitations on Social Distancing at
                        FCI Terminal Island Do Not Constitute Deliberate Indifference ...... 4

                2.      Petitioners Have Failed to Satisfy the PLRA's Exhaustion
                        Requirements .......................................................................... 6

        B.      The Court Does Not Have Jurisdiction Over the BOP's Placement
                Determinations ................................................................................... 8

                1.      Petitioners Are Requesting a Prisoner Release Order and the
                        PLRA Prohibits the Relief Petitioners Request ................................. 8

                2.      Any Order Requiring Release Runs Afoul of the Statutory
                        Prohibition on Judicial Review of the BOP's Home
                        Confinement Determination ................................................ 12

        C.      The Circuits Courts Have Held that the Irreparable Injury and Public
                Interest Factors Weighed Against an Injunction ............................ 15

III.    CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarez v. Larose,*
2020 WL 2315807 (S.D. Cal. May 9, 2020)...............................................6, 11

*Alvarez v. Larose,*
2020 WL 3053193 (S.D. Cal. June 7, 2020)................................................8, 9

*Baez v. Moniz,*
2020 WL 2527865 (D. Mass. May 18, 2020) ...................................................6

*Booth v. Churner,*
532 U.S. 731 (2001) ......................................................................................6, 7

*Cameron v. Bouchard,*
2020 WL 2569868 (E.D. Mich. May 21, 2020)................................................5

*Chunn v. Edge,*
2020 WL 3055669 (E.D.N.Y. Jun. 9, 2020) ....................................................6

*Coleman v. Brown,*
28 F. Supp. 3d 1068 (E.D. Cal. 2014)............................................................11

*Crum v. Blanckensee,*
2020 WL 3057799 (C.D. Cal. Jun. 8, 2020) ...........................................13, 14

*Edmo v. Corizon,*
935 F.3d 757 (9th Cir. 2019) .........................................................................11

*Farmer v. Brennan,*
511 U.S. 825 (1994) .................................................................................passim

*Gilmore v. California,*
220 F.3d 987 (9th Cir. 2000)..........................................................................11

*Grinis v. Spaulding,*
2020 WL 2300313 (D. Mass. May 8, 2020) ....................................................6

*Jones v. Bergami,*
2020 WL 2575566 (W.D. Tex. May 21, 2020).................................................6

*Jones v. Bock*,
    549 U.S. 199 (2007) .................................................................................. 7

*Livas v. Myers*,
    2020 WL 1939583 (W.D. La. Apr. 22, 2020) .......................................... 6

*Money v. Pritzker*,
    2020 WL 1820660 (N.D. Ill. Apr. 10, 2020) .............................. 6, 8, 9, 11

*Nellson v. Barnhart*,
    2020 WL 1890670 (D. Col. Apr. 16, 2020) ........................................ 6, 7

*Plata v. Newsom*,
    2020 WL 1908776 (N.D. Cal. Apr. 17, 2020) .......................................... 6

*Porter v. Nussle*,
    534 U.S. 516 (2002) .................................................................................. 7

*Reeb v. Thomas*,
    636 F.3d 1224 (9th Cir. 2011) ................................................................ 13

*Swain v. Junior*,
    –F.3d–, 2020 WL 3167628 (11th Cir. Jun. 15, 2020) ..................... passim

*Toguchi v. Chung*,
    391 F.3d 1051 (9th Cir. 2004) .................................................................. 2

*United States v. Ceballos*,
    671 F.3d 852 (9th Cir. 2011) .................................................................. 13

*Valentine v. Collier*,
    956 F.3d 797 (5th Cir. 2020) ..................................................... 1, 4, 7, 15

*Wilson v. Seiter*,
    501 U.S. 294 (1991) ................................................................................ 10

*Wilson v. Williams*,
    2020 WL 1940882 (N.D. Ohio Apr. 22, 2020) ........................................ 1

*Wilson v. Williams*,
    –F.3d.–, 2020 WL 3056217 (6th Cir. Jun. 9, 2020) ......................... passim

*Winter v. Nat'l Resources Defense Council*,
  555 U.S. 7 (2008) ..................................................................................4

*Woodford v. Ngo*,
  548 U.S. 81 (2006) ................................................................................7

*Wragg v. Ortiz*,
  2020 WL 2745247 (D.N.J. May 27, 2020) ...........................................6

*Wragg v. Ortiz*,
  2020 WL 3074026 (D.N.J. Jun. 10, 2020) ............................................7

Statutes

18 U.S.C. § 3582(c)(2) .........................................................................12

18 U.S.C. § 3585(b) ..............................................................................12

18 U.S.C. § 3624(c) ..............................................................................13

18 U.S.C. § 3626(g)(2) .........................................................................10

18 U.S.C. § 3626(g)(4) ...........................................................................3

18 U.S.C. §§ 3621(b) ............................................................................13

18 U.S.C. §§ 3626 ...................................................................................8

18 U.S.C. §§ 3626(a)(3)(A) ..................................................................11

28 U.S.C. § 3624(c) ..............................................................................12

28 U.S.C. § 3624(c)(2) ..........................................................................12

42 U.S.C. § 1997e(a) ..............................................................................7

PL 116-136 ............................................................................................13

**Regulations**

28 C.F.R. § 542.18 ..................................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Petitioners' TRO application must be denied because there is no Eighth Amendment violation. Petitioners fail to address recent decisions from the Fifth, Sixth and Eleventh Circuits in nearly identical factual circumstances overturning district court decisions that had granted the precise relief that Petitioners seek here:

- In *Wilson v. Williams*, –F.3d.–, 2020 WL 3056217, at *11 (6th Cir. Jun. 9, 2020) ("*Williams*"), the Sixth Circuit held that there was no Eighth Amendment violation where the "BOP has not turned a blind eye or a deaf ear to a known problem" because the "BOP has in fact put in place and updated its protocols to address the novel risks from COVID-19."

- In *Swain v. Junior*, –F.3d–, 2020 WL 3167628, at *5 (11th Cir. Jun. 15, 2020), the Eleventh Circuit reiterated that in the prison context, "[o]rdinary malpractice or simple negligence won't do; instead, the plaintiff must show 'subjective recklessness as used in criminal law.'" (Quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 838-40 (1994)). *Swain* held that neither the "fact that COVID-19 was continuing to spread" in the prison nor the "impossibility of achieving adequate social distancing" amounted to deliberate indifference. *Id.* at *6.

- In *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020), the Fifth Circuit held that "after accounting for the protective measures [the prison] has taken, the Plaintiffs have not shown a substantial risk of serious harm that amounts to cruel and unusual punishment," and the district court failed to properly apply *Farmer*. (Internal quotation marks omitted).[1]

---

[1] Petitioners' failure to address these decisions is inexcusable, especially since in prior briefing, Petitioners relied heavily on the district court case, *Wilson v. Williams*, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020). *See* Dkt. No. 10 ("TRO App.") at 58, 62, 63, 66, 67; Dkt. No. 30 ("TRO Reply") (*passim*). Petitioners' failure to address the *Williams* appellate decision negates these prior arguments. Petitioners clearly know of the appellate decision as Respondents had filed a notice of supplemental authority on June 10, 2020, attaching it. Dkt. No. 40.

1

The same analysis applies here. In fact, the Court described the BOP's efforts at FCI Terminal Island as "laudable." Dkt. No. 41 at 20. Respondents respectfully submit that the BOP's "laudable" efforts, which are further detailed herein, are at direct odds with a finding of deliberate indifference.

Further, to obtain an injunction, Petitioners must show that the "prison authorities' current attitudes and conduct" meets the "high legal standard" of deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). In other words, Petitioners must show that today, Respondents are *recklessly disregarding* an excessive risk to inmate safety, and will continue to do so in the future. *See Farmer*, 511 U.S. at 845. Petitioners cannot make this showing, given all the actions that the BOP has taken to protect its inmates from COVID-19. Beginning in January 2020, months before this lawsuit was filed, the BOP initiated a comprehensive, seven-step plan to reduce the spread of COVID-19 in its institutions. *See* Dkt. No. 24 ("TRO Opp.") at 5:13-10:23.

These measures were implemented at FCI Terminal Island, where every inmate was tested for COVID-19 and the BOP had implemented cohorting, isolation, quarantining, and social distancing measures. *See* Dkt. No. 28 ("Prioleau Decl.") ¶¶ 46-49, 54, Ex. E at 37. FCI Terminal Island undertook significant efforts to educate inmates and staff, health-screen all individuals on site, screen new arrivals, provide surgical and cloth masks, conduct daily temperature checks, and increase sanitation measures and the amount of cleaning supplies. *Id.* ¶¶ 27-64. Petitioners ignore these facts. Indeed, prior to bringing suit, Petitioners had averred they had been receiving these protections.[2] In addition, if such protections were lacking, Petitioners were mandated to exhaust their requests under the PLRA, which they did not do.

---

[2] *See* Dkt. No. 1 ("Compl.") ¶ 61 (FCI Terminal Island began testing its "entire prisoner population" around April 28, 2020), ¶ 11 (masks were issued around the "end of late April"); ¶ 18 (inmates' temperatures were being taken); *id.* at 95 (Samra Decl. ¶ 13) (hand sanitizer was made available to inmates in late-April 2020); ¶¶ 47, 55 (tents were erected and warehouse converted in an attempt to increase physical distancing); ¶ 48 (disinfectant was provided); ¶ 62 (cohort-style segregation and quarantine of inmates); ¶¶ 63-64 (COVID-19 positive inmates were not housed with negative inmates); ¶ 71 (Warden Ponce considered and released inmates to home confinement).

2

Petitioners' request for broad injunctive relief should also be rejected because what they truly seek is a "prisoner release order" as that term is defined in 18 U.S.C. § 3626(g)(4) to include any relief that "has the purpose or effect of reducing or limiting the prison population." Petitioners attempt to do an end-run around the PLRA, which prohibits the Court for entering prison release orders, by "ask[ing] the Court to put in place a process that ensures that Respondents will act in compliance with the Eighth Amendment—specifically, to order *Respondents* to exercise authority they already have under the CARES Act to 'maximize' transfers to home confinement" and "to accelerate compassionate release decisions." *Id.* at 7:17-8:1 (emphasis in original). Petitioners request an order to "transfer or release enough prisoners that allows for effective social distancing." *Id*. 7:10-15. In other words, Petitioners are asking the Court to issue an order that "has the purpose or effect of reducing or limiting the prison population" through the transfer of inmates away from FCI Terminal Island. That is precisely what the PLRA defines as a "prisoner release order." Indeed, Petitioners appear to understand that their request falls within the PLRA, because they ask the Court to strike the PLRA itself as unconstitutional. *Id.* at 6:10-12.

Petitioners' request should be denied. As the Sixth Circuit found: "We simply cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, the defendants here acted unreasonably by 'doing their best.'" *Swain*, 2020 WL 3167628, at *8 (quoting *Farmer*, 511 U.S. at 845; *Williams*, 2020 WL 3056217, at *7). Petitioners' attempt to repackage their habeas claims under the Eighth Amendment is moreover improper given the Court's prior ruling. *See* Dkt. No. 41. This is so because the CARES Act and the Attorney General memorandum did not change the fundamental rule that district courts do not have the authority to review BOP placement decisions, including to home confinement.

For these reasons, and for those stated in Respondents' opposition, Petitioners cannot meet the first injunction criterion of showing likelihood of success on the merits

for their requested relief and their TRO application must be denied. *See Winter v. Nat'l Resources Defense Council*, 555 U.S. 7, 20 (2008). Petitioners also cannot meet the irreparable injury and the public interest factors for the same reasons recently articulated by the Fifth, Sixth and Eleventh Circuits. Because Petitioners are unable to meet any of the preliminary injunction factors, Respondents respectfully request that the Court deny their TRO application as to the alleged Eight Amendment violation.

## II.   ARGUMENT

### A.   Petitioners Cannot Meet the Eighth Amendment Standard of Deliberate Indifference[3]

#### 1.   COVID-19 Infections and Limitations on Social Distancing at FCI Terminal Island Do Not Constitute Deliberate Indifference

Respondents recognize and regret that FCI Terminal Island inmates have been infected and died as a result of COVID-19, and are among the 2,416,727 Americans who have been infected, and the 122,550 Americans who have died from this novel virus to date, including the 89,490 persons infected and 3,205 persons who have died in Southern California.[4] The Fifth, Sixth and Eleventh Circuits, however, found that prison officials' inability to eliminate the spread of a highly-contagious virus among inmates does not rise to an Eighth Amendment violation: "while the harm imposed by COVID-19 on inmates at Elkton 'ultimately [is] not averted,' the BOP has 'responded reasonably to the risk' and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights.'" *Williams*, 2020 WL 3056217, at *8 (quoting *Farmer*, 511 U.S. at 844); *Valentine*, 956 F.3d at 801 ("incidence of diseases or infections, standing alone," do not "imply unconstitutional confinement conditions, since any densely populated

---

[3] Respondents previously explained why Petitioners were unlikely to succeed on their Eighth Amendment claim. TRO Opp. at 34:4-39:25.

[4] *Coronavirus Resource Center: COVID-19 Dashboard*, John Hopkins Univ. & Med., https://coronavirus.jhu.edu/map.html (last accessed June 25, 2020); http://publichealth.lacounty.gov/media/coronavirus/ (last updated June 24, 2020).

residence may be subject to outbreaks") (citation omitted). Similarly, the Eleventh Circuit held:

> First, and most obviously, the district court erred in relying on the increased rate of infection. On this point, the Supreme Court's decision in *Farmer* couldn't be any clearer: "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, *even if the harm ultimately was not averted*."

*Swain*, 2020 WL 3167628, at *7 (quoting *Farmer*, 511 U.S. at 844) (emphasis in original). Similarly, this Court should reject Petitioners' argument based on the lone fact that prisoners have been infected and died due to the COVID-19 virus because the Eighth Amendment focus should not be "on isolated failures—or impossibilities, as the case may be—but rather on the defendants' entire course of conduct." *Id*. The BOP's entire course of conduct at FCI Terminal Island demonstrates that Respondents reacted reasonably and humanely to the COVID-19 pandemic.

Similarly, Petitioners' request for "transfer or release [of] enough prisoners that allows for effective social distancing during this pandemic" (Supp. Mem. at 7:11-12) is not an Eighth Amendment violation within the prison context. The Eleventh Circuit, in fact, rejected this argument, citing the CDC's guidance in institutional settings, finding that where prison officials "took numerous *other* measures—besides social distancing— to mitigate the spread of the virus," including requiring the use of face masks, screening of staff into the facility, daily temperature screening, suspending outside visitation, and providing disinfecting and hygiene supplies to all inmates, prison officials could not be found liable because they could not meet the subjective component under the Eighth Amendment. *Swain*, 2020 WL 3167628, at *8 (emphasis in original). The measures identified in *Swain* are being undertaken here. Prioleau Decl. ¶¶ 27-64.

Petitioners ignore *Swain* and exclusively rely on *Cameron v. Bouchard*, 2020 WL 2569868, at *28 (E.D. Mich. May 21, 2020) (*see* Supp. Mem. at 15:17-21), an outdated district court decision that has been stayed by the Sixth Circuit. On June 11, 2020, the

5

Sixth Circuit granted the *Cameron* defendants' motion to stay the *Cameron* order based on *Williams*, concluding that the *Cameron* plaintiffs were "unlikely to succeed on the merits of their Eighth and Fourteenth Amendment claims." *See Cameron v. Bouchard*, case no. 2:20-cv-10949, Dkt. No. 139 (attached hereto as Exhibit A). Petitioners therefore have not presented any authority in support of their position, and the three Circuit court decisions to decide this issue, and nearly all district court decisions, compel a finding that Petitioners are unlikely to prevail on their Eighth Amendment claim.[5]

2.   Petitioners Have Failed to Satisfy the PLRA's Exhaustion Requirements

The Court previously stated as to the habeas claim that it was "satisfied that exhaustion is met or excused here, for the reasons argued by Petitioners." Dkt. No. 41 at 19-20 (citing TRO Reply at 14-17). Petitioners first raised in their reply brief that: (1) there was no administrative procedure to be considered for home confinement under the CARES Act; (2) exhaustion would be "futile due to the urgency of the COVID-19 pandemic"; and (3) administrative remedies have been made "effectively unavailable at this time." TRO Reply at 14:23-15:2. Respondents respectfully submit that these arguments are unavailing. First, Petitioners bring a conditions-of-confinement claim under the Eighth Amendment, and not whether an inmate should be considered for home confinement under the CARES Act. Second, the Supreme Court was clear when it held that "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 (2001). Respondents do not have the burden of demonstrating the availability of administrative

---

[5]   *See Chunn v. Edge*, 2020 WL 3055669, at *24 (E.D.N.Y. Jun. 9, 2020); *Wragg v. Ortiz*, 2020 WL 2745247, at *21 (D.N.J. May 27, 2020); *Jones v. Bergami*, 2020 WL 2575566, at *1-2 (W.D. Tex. May 21, 2020); *Baez v. Moniz*, 2020 WL 2527865, at *7-9 (D. Mass. May 18, 2020); *Alvarez v. Larose*, 2020 WL 2315807, at *3-4 (S.D. Cal. May 9, 2020); *Grinis v. Spaulding*, 2020 WL 2300313, at *3 (D. Mass. May 8, 2020); *Livas v. Myers*, 2020 WL 1939583, at *6-8 (W.D. La. Apr. 22, 2020); *Plata v. Newsom*, 2020 WL 1908776, at *3-9 (N.D. Cal. Apr. 17, 2020); *Nellson v. Barnhart*, 2020 WL 1890670, at *6 (D. Col. Apr. 16, 2020); *Money v. Pritzker*, 2020 WL 1820660, at *10 (N.D. Ill. Apr. 10, 2020).

6

remedies where Petitioners have not submitted a single fact that could support any claim that they attempted to pursue administrative remedies but were thwarted. *See id.* Finally, Petitioners did not address Respondents' argument that they could have requested emergency relief under 28 C.F.R. § 542.18, but failed to do so. *See* TRO Opp. at 31:22-32:4; *Nellson*, 2020 WL 1890670, at *4. Thus, Respondents respectfully submit that the Court should not give such credence to Petitioners' arguments because Petitioners admit that they did not even attempt to exhaust their administrative remedies. TRO App. at 52:25-57:7. Therefore, there was and is no reason for Respondents to submit evidence on an undisputed fact. *See Valentine*, 956 F.3d at 804 (inmates' suit "premature" where inmates did not utilize the administrative process when they were "required to exhaust").

The PLRA's exhaustion requirement applies to Petitioners' Eighth Amendment claims concerning prison conditions, which requires an inmate, *before* filing suit, to exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (the exhaustion requirement applies to all suits regarding prison life); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("unexhausted claims cannot be brought in court"); *Farmer*, 511 U.S. at 847 (in cases seeking injunctive relief to address "current" prison conditions, inmates are not "free to bypass adequate internal prison procedures and bring their health and safety concerns directly to court"). Indeed, the Eleventh Circuit affirmed the PLRA exhaustion requirement within the COVID-19 context, holding: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Swain*, 2020 WL 3167628, at *11 (quoting *Jones*, 549 U.S. at 211); *see also Wragg v. Ortiz*, 2020 WL 3074026, at *2 (D.N.J. Jun. 10, 2020) ("the Court takes this opportunity once again to reiterate its view that a vulnerable inmate who is truly at risk is able to pursue the statutory avenues of relief available to him").

Had Petitioners attempted to utilize the administrative process, the BOP could have attempted to fix the problems for which they now demand injunctive relief, *i.e.*, if they had requested medical service, additional masks, hand sanitizer, etc. *Woodford v.*

*Ngo*, 548 U.S. 81, 89 (2006) (exhaustion provides the BOP with "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court"). The fact that Petitioners did not even attempt to exhaust administrative remedies, or present facts that any such attempt would have been futile is an additional reason why their conditions-of-confinement claim should be denied.

### B. The Court Does Not Have Jurisdiction Over the BOP's Placement Determinations

#### 1. Petitioners Are Requesting a Prisoner Release Order and the PLRA Prohibits the Relief Petitioners Request

To circumvent the PLRA, Petitioners take great care to insist that they are not seeking an order requiring the release of inmates from custody, but are instead seeking an "order requiring Respondents to fully utilize their authority to transfer non-violent prisoners with viable home confinement plans and to evaluate quickly compassionate release requests so that they may be escalated to the courts as appropriate." Supp. Mem. at 7:12-15. Petitioners also claim that they are not seeking a "prisoner release order" because COVID-19, and not overcrowding, is the impetus behind their attempt to reduce the prison population. *Id.* at 13:13-15. Neither of these attempts to circumvent the PLRA are availing and they have been specifically rejected in other cases where courts have held that the release Petitioners are seeking is in fact a "prisoner release order" and that such relief is precluded by the PLRA. *Money*, 2020 WL 1820660, at *14 ("The upshot is that the PLRA prevents this Court from granting the temporary restraining order on the Section 1983 claim for a number of reasons."); *Alvarez*, 2020 WL 3053193, at *5 (S.D. Cal. Jun. 7, 2020) (PLRA applies where petitioners "seek an order that has the effect of reducing or limiting the prison population" even if couched as a "conditions of confinement" claim).

*Money* and *Alvarez* were correctly decided because the PLRA applies to "any civil action with respect to prison conditions" and defines "prisoner release order" as "any order, including a temporary restraining order or preliminary injunctive relief, that has

8

the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners to a prison." 18 U.S.C. §§ 3626 (a)(1)(A), (a)(2), (a)(3)(A), and (g)(4). The relief Petitioners request is, in fact, a prisoner release order under the PLRA as it would have the purpose or effect of reducing the prison population. As in *Money*, Petitioners devoted the bulk of their Complaint and their original TRO Application to explaining that the crowded conditions inherent in prison living arrangements are unsafe during a pandemic.[6] As in *Money*, to avoid the application of the PLRA, Petitioners have now sought to recast the relief they are seeking, purportedly not as a prisoner release order, but as "an order requiring Respondents to fully utilize their authority to transfer non-violent prisoners with viable home confinement plans and to evaluate quickly compassionate release requests so that they may be escalated to the courts as appropriate." However, as noted in *Money*: "There is no doubt that Plaintiffs' request – even if couched in terms of a process – would have the purpose and effect of reducing the population in Illinois prisons." 2020 WL 1820660, at *12. "Reducing the prison population is not just a side effect of the case – it is the whole point." *Id.* at *13; *Alvarez*, 2020 WL 3053193, at *5. The same is true here–as much as Petitioners seek to avoid the application of the PLRA by insisting they are not asking for release of inmates, but merely a "process" regarding release, Petitioners own statements belie their newfound insistence that they are not seeking an order that reduces the prison population. In the TRO Application, Petitioners argued:

> Respondents are refusing to implement the obvious solution that would both prevent even more infection and reduce the strain on medical resources: using the authority Congress provided them under the [CARES Act] to release more prisoners into home confinement. Experts confirm that it is impossible for Respondents to make Terminal Island compliant with CDC guidelines *without significantly reducing the prisoner population.*

TRO App. at 13:21-14:1 (emphasis in original). Petitioners have argued since the inception of this case that the inability to practice social distancing is a per se Eighth

---

[6] *See* Compl. ¶¶ 11, 12, 36, 39, 47, 51, 55, 100; TRO App. at 13:1-2, 13:25-14:1.

Amendment violation and that the BOP must release inmates to create the space necessary for social distancing. For Petitioners to now argue that they are not seeking a prisoner release order is a disingenuous and transparent attempt to circumvent the PLRA. In addition, the Sixth Circuit rejected this same argument where "petitioners contend that the BOP's response was not a reasonable response to the virus because the BOP had not made full use of the tools available to remove inmates from Elkton, such as temporary release, furlough, or home confinement" because "our precedents do not require that prison officials take every possible step to address a serious risk of harm." *Williams*, 2020 WL 3056217, at \*11 (citing *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)).

Petitioners' other efforts to explain why the PLRA does not apply are unavailing. Petitioners go to great lengths to explain the background behind the PLRA, and argue that it only applies to "traditional overcrowding, where more people are crammed into a space than the space was designed to hold." Supp. Mem. at 17:3-5. First, Petitioners' newfound attempt to distance themselves from claiming that they are not seeking relief based on overcrowding is notable in light of the fact that they insisted, in no less than 18 places in their Complaint, that Terminal Island is "overcrowded." *See e.g.*, Compl. ¶¶ 47, 51, 55, 100. It is impossible to separate overcrowding from Petitioners' allegations that they cannot exercise social distancing – inherent in the allegation that FCI Terminal Island is overcrowded is the inability for inmates to stay a sufficient physical distance apart. Petitioners' new claim that "crowding is not the primary violation of Petitioners' rights" (Supp. Mem. at 16:8-9), especially in light of their prior repeated allegations of overcrowding, is clearly a transparent attempt to avoid the PLRA.

Second, nothing in the statutory language of the PLRA restricts its application to situations dealing with overcrowding or "traditional overcrowding" as Petitioners argue. The PLRA applies to "any civil action with respect to prison conditions" which is defined as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact

10

or duration of confinement in prison." 18 U.S.C. § 3626(g)(2). There can be no doubt that Petitioners are complaining about their conditions of confinement and the effects of actions by government officials on the lives of persons confined in prison. Because Petitioners are challenging their conditions of confinement, the PLRA by its plain terms, applies and prohibits the relief Petitioners seek. As Respondents explained in their TRO opposition, under the PLRA, a "prisoner release order" may "be entered only by a three-judge court," and then only if: "(i) a court has previously entered an order for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prisoner release order; and (ii) the defendant has had a reasonable amount of time to comply with the previous court orders." 18 U.S.C. §§ 3626(a)(3)(A) & (B). *See also* TRO Opp. at 24:24-26:27.[7]

Recognizing that the PLRA presents an insurmountable obstacle to the relief they are requesting, Petitioners make the extraordinary argument that the Court either must construe the PLRA in the way that they construe it (which is at odds with the plain language of the PLRA and with numerous courts including *Alvarez*, 2020 WL 2315807, at *3-4 and *Money*, 2020 WL 1820660, at *10-14), or the PLRA "must be struck down." Supp. Mem. at 6:12. Petitioners provide no statutory or applicable case authority for why or how this Court may simply "strike down" the PLRA to provide Petitioners with the relief they seek.[8]

---

[7] Petitioners ignore the PLRA, and rely on the district's court inherent powers to remedy Eighth Amendment violations. *See* Supp. Mem. at 8:7-9:18. Again, Petitioners' reliance on *Cameron v. Bouchard* is misplaced as the district court decision has been stayed, and will likely be reversed as in *Williams*. In addition, the reasoning in *Cameron* is unpersuasive and was specifically rejected by *Money* and *Alvarez*. Petitioners also cite to *Edmo v. Corizon*, 935 F.3d 757, 803 (9th Cir. 2019) and *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1108-09 (E.D. Cal. 2014), but neither case involved a prisoner release order. *Edmo* involved an injunction requiring the Idaho Department of Corrections to provide surgery to treat a transgender inmate's gender dysphoria and *Coleman* involved an injunction requiring the California Department of Corrections to change its policies and practices of housing mentally ill inmates in administrative segregation units and segregated housing units.

[8] Petitioners cite to *Gilmore v. California*, 220 F.3d 987, 997 (9th Cir. 2000) for the generic principle that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other which such

11

2. <u>Any Order Requiring Release Runs Afoul of the Statutory Prohibition on Judicial Review of the BOP's Home Confinement Determination</u>

Petitioners insist they are not seeking an inmate release order, but merely an "order requiring Respondents to fully utilize their authority to transfer non-violent prisoners with viable home confinement plans and to evaluate quickly compassionate release requests[9] so that they may be escalated to the courts as appropriate." Supp. Mem. at 7:12-15. However, the BOP has sole discretion over inmate placement decisions, including placement to home confinement, and those individualized decisions are not subject to judicial review. Nothing in the CARES Act limits or proscribes the BOP's sole discretion as to inmate placement decisions, nor does anything in the CARES Act require that the BOP release Petitioners.

The CARES Act does not abridge or limit the BOP's discretion in making placement determinations. 28 U.S.C. § 3624(c) limits the amount of time a prisoner may be placed to home confinement for the shorter of 10 percent of the term of imprisonment or six months. Section 12003 of the CARES Act provides that during the covered emergency period, the BOP Director is authorized to lengthen the maximum amount of time the Director may place inmates in home confinement under 28 U.S.C. § 3624(c)(2).

---

questions are avoid, our duty is to adopt the later.") Supp. Mem. at 6:12-15. *Gilmore*, moreover, is inapposite as it addressed the termination provisions of the PLRA. *See* 220 F.3d at 1007-08. Not only are the PLRA's termination provisions completely inapplicable to this case, Petitioners are trying to nullify the plain language of the PLRA.

[9] It is unclear how Petitioners' requested relief that the BOP quickly evaluate home confinement requests would alleviate their concerns when inmates themselves are free to bring compassionate release motions with their sentencing courts (as Wilson has already done in *United States v. Wilson*, No. 1:15-cr-0046-NONE-SKO, Dkt. No. 242 (E.D. Cal. May 5, 2020). The BOP cannot reduce an inmate's sentence. The authority to reduce an inmate's sentence rests solely with the sentencing court under 18 U.S.C. § 3585(b). Prior to the First Step Act, the BOP had the sole authority to bring a motion for reduction in sentence, but with the passage of the First Step Act, the inmate may bring the reduction in sentence motion directly 30 days after having filed a request with the Warden. *See* 18 U.S.C. § 3582(c)(2). As this Court has noted, it has ruled on several compassionate release requests brought by inmates under the First Step Act since COVID-19, and has granted compassionate release to one inmate at FCI Terminal Island. Dkt. No. 41 at 1. Since March 1, 2020, FCI Terminal Island has released 46 inmates, 13 of which were released through a grant of compassionate release. Declaration of Todd Javernick ("Javernick Decl."), filed concurrently herewith, ¶ 28.

Thus, the BOP temporarily has the authority to place certain inmates on home confinement under 18 U.S.C. § 3624(c) without regard to the six month/ten percent of term imprisonment time limits found in that section. Pursuant to the expansion of time for home confinement permitted under the CARES Act, the BOP has already exercised its discretion and already placed thousands of inmates on home confinement.[10] That the BOP has not placed as many people as Petitioners would like to home confinement is not something that is judicially reviewable. Although Petitioners seek to cast the BOP's suitability criteria (e.g., PATTERN recidivism scores, the determination that those released to home confinement may not be violent or sex offenders) as "artificial barriers" to home confinement (Supp. Mem. at 10:2), importantly, nothing in the CARES Act limits or restricts the BOP Director's sole discretion to determine whether, when, and for how long to place inmates on home confinement. To the contrary, in passing the CARES Act, Congress preserved the Director's authority to use it "as the Director deems appropriate." CARES Act, PL 116-136, 134 Stat 281 § 12003(b) (Mar. 27, 2020).

Further, no court has the authority to order the BOP to place an inmate to home confinement because 18 U.S.C. §§ 3621(b) and 3625 prohibit a court from reviewing the BOP's decision of where to place an inmate. *Reeb v. Thomas*, 636 F.3d 1224, 1226-28 (9th Cir. 2011) (courts lack jurisdiction to review BOP's placement decisions under 18 U.S.C. §§ 3621-25); *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) ("[T]he court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons."). In *Crum v. Blanckensee*, 2020

---

[10] Petitioners' misleading characterization of BOP Director Michael Carvajal's Congressional testimony is irrelevant to the questions at issue in this TRO Application. Supp. Mem. at 10:10-11:16. Contrary to Petitioners' characterization, Mr. Carvajal did not refuse to provide the number on inmates considered for home confinement at FCI Danbury. He testified that he did not have the exact numbers on hand and would provide them later, and that as of June 2, 2020, more than 6,000 inmates were placed on home confinement. *See* Video of Senate Judiciary Hearing, available at https://www.judiciary.senate.gov/meetings/examining-best-practices-for-incarceration-and-detention-during-covid-19. Moreover, the number of prisoners placed on home confinement at FCI Danbury has no relevance to claims regarding FCI Terminal Island.

WL 3057799, at *3 (C.D. Cal. Jun. 8, 2020) (Hon. David O. Carter), the district court dismissed an inmate's habeas petition requesting transfer to home confinement in light of the COVID-19 pandemic and the conditions at FCI Lompoc given § 3621's express prohibition against judicial review. In dismissing the habeas petition, the court noted that "the decision whether to place the petitioner in home confinement is within the exclusive province of the BOP and is not subject to judicial review." *Id.*

Finally, the BOP has taken extensive and good faith measures to identify which inmates at FCI Terminal Island are eligible for home confinement. Javernick Decl. ¶¶ 6-27. It has used SENTRY data to identify which inmates may be eligible based on their offenses (excluding crimes of violence, sex crimes, or terrorism) and has conducted individualized assessments on whether eligible inmates may be released to home confinement.[11] *Id.* at ¶¶ 7-24. The BOP has generated no less than 10 iterations of rosters of eligible inmates for home confinement, modified the rosters over time, added inmates to the rosters, and considered the medical vulnerabilities of inmates in the process. *Id.* As a result, approximately 114 inmates at FCI Terminal Island have been identified for home confinement screening and individually assessed for home confinement placement. *Id.* at ¶ 26. From March 23, 2020 through June 23, 2020, 110 inmates at FCI Terminal Island were furlough transferred to home confinement or a residential re-entry center. *Id.* at ¶ 27. An additional 28 inmates have been referred to home confinement and are awaiting their placement dates. *Id.* at ¶ 26. However, all of this is subject to the BOP's discretion and while the CARES Act expands the amount of time the BOP may place someone on home confinement, nothing in the CARES Act alters the fact that it is the BOP's discretionary decision to place an inmate on home confinement and that a Court may not review that determination. Thus, Petitioners are unlikely to succeed on the merits for this relief in addition to being unable to state an Eighth Amendment violation.

---

[11] As Respondents explained in their opposition, Petitioner Smith does not qualify for priority placement on home placement because his offense is both violent and a sex offense. *See* Dkt. No. 26 (Roman Decl. ¶ 8.c) (sex trafficking of children by force, fraud, and coercion). Petitioner Vasquez also does not qualify because he was convicted of a violent offense. *Id.* ¶ 11.c. (aggravated kidnapping).

14

1
2

### C.   The Circuits Courts Have Held that the Irreparable Injury and Public Interest Factors Weighed Against an Injunction

3   Respondents addressed in their opposition why the irreparable harm and public

4   interest factors weigh against an injunction. *See* TRO Opp. at 39:26-44:3. The recent

5   Circuit court decisions support Respondents' arguments. The Sixth Circuit found that

6   because the "injunction would result in release of some prisoners," the "BOP's concerns

7   about how the released inmates would look after themselves" was legitimate. *Williams*,

8   2020 WL 3056217, at *12. The Eleventh Circuit found that the district court erred as to

9   the irreparably injury factor because it did not explain how the "measures to safeguard

10  inmates from COVID-19" was "insufficient before deciding that *only* a mandatory

11  injunction could prevent the plaintiffs from suffering irreparable harm." *Swain*, 2020 WL

12  3167628, at *11 (emphasis in original). Similarly, the Fifth Circuit found that the harm

13  to prison officials was "particularly acute because the district court's order interferes

14  with the rapidly changing and flexible system-wide approach that [the prison] has used

15  to respond to the pandemic so far." *Valentine*, 956 F.3d at 803.

16          Finally, all third Circuits found that the public interest weighed against injunction.

17  *Williams*, 2020 WL 3056217, at *12 (the district court was wrong to disregard the BOP's

18  arguments regarding the public's safety of potential threats of recidivism by the released

19  prisoners); *Swain*, 2020 WL 3167628, at *11 ("especially in the prison context,

20  government officials have a keen interest in maintaining the necessary flexibility to react

21  quickly in response to new information about the virus") (internal quotation marks and

22  citations omitted); *Valentine*, 956 F.3d at 804 (plaintiffs had not shown that "they would

23  suffer irreparable injuries *even after* accounting for the protective measures" put in place

24  by the prison) (emphasis in original). Petitioners' request for a TRO should also be

25  denied because they cannot meet the irreparable injury or public interest factors.

26  ### III.   CONCLUSION

27          For these additional reasons, Respondents respectfully request that the Court deny

28  Petitioners' TRO application.

15

Dated: June 25, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section


 */s/ Keith M. Staub*
KEITH M. STAUB
CHUNG H. HAN
JASMIN YANG
DAMON A. THAYER
PAUL B. GREEN
Assistant United States Attorney
Attorneys for Respondents