UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 20-4451-MWF (MRWx)** **Date: July 14, 2020**
Title: Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):** ORDER RE: SUPPLEMENTAL MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION [49]

Before the Court is Plaintiffs-Petitioners Lance Wilson, Maurice Smith, and Edgar Vasquez's Supplemental Memorandum in Support of Ex Parte Application for a Temporary Restraining Order ("TRO") and an Order to Show Cause re Preliminary Injunction (the "Supplemental TRO Application") against Defendants-Respondents Felicia L. Ponce, in her official capacity as Warden of Terminal Island (the "Warden"), and Michael Carvajal, in his official capacity as Director of the Bureau of Prisons, filed on June 22, 2020. (Docket No. 49). On June 25, 2020, Respondents filed an Opposition. (Docket No. 50).

The Supplemental TRO Application is **DENIED *in part***. The Court determines that Petitioners' ***first*** claim for relief – a process for immediate evaluation of the prisoners for home confinement or compassionate relief– is barred under the Prison Litigation Reform Act ("PLRA"). However, the Court determines that Petitioners' ***second*** claim for relief – improvement of conditions at FCI Terminal Island – is not barred under the PLRA. Before ruling on whether a temporary restraining order or a preliminary injunction is warranted on this second claim for relief, the Court orders that Dr. Michael Rowe to conduct an independent site visit of FCI Terminal Island.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 20-4451-MWF (MRWx) Date: July 14, 2020**
Title: Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

The parties are **ORDERED** to schedule a site visit at FCI Terminal Island, which will be conducted by Dr. Michael Rowe, by no later than **August 3, 2020**. Dr. Rowe to submit a report of his findings by no later than **August 24, 2020**. The parties may mutually agree on different dates.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions, and courts apply the same standards to both. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking injunctive relief must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his favor; and (4) an injunction is in the public interest. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008)).

"[T]he burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006); *see also Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004) (reasoning that, where a nonmovant would bear the burden of persuasion at trial, the movant seeking a preliminary injunction "must be deemed likely to prevail" if the nonmovant fails to make an adequate showing).

As to the specific relief sought, "[a] preliminary injunction can take two forms:" prohibitory and mandatory. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009). "A prohibitory injunction prohibits a party from taking action and 'preserve[s] the status quo pending a determination of the action on the merits.'" *Id*. (quoting *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988)). "A mandatory injunction 'orders a responsible party to take action.'" *Id*. at 879 (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)) (internal quotation marks omitted). "A mandatory injunction 'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'" *Id*. (alterations in original)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 20-4451-MWF (MRWx) Date: July 14, 2020**
Title: Lance Aaron Wilson, et al. v. Felicia L. Ponce, et al.

(quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)) (internal quotation marks omitted). "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879 (quoting *Anderson*, 612 F.2d at 1115); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (mandatory injunction should be denied "unless the facts and law clearly favor the moving party.").

## II. DISCUSSION

The factual background of this case is set forth in the Court's June 10, 2020 Amended Order Denying Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction. ("First TRO Order") (Docket No. 41). Therefore, the Court only provides the relevant facts as necessary in the Court's discussion below.

Petitioners has asserted two claims in this action: a habeas claim under 28 U.S.C. § 2241, and another directly under the Eighth Amendment. (*See generally* Complaint).

In the First TRO Order, the Court denied Petitioners' application to seek immediate relief under the first habeas claim. While acknowledging that there was a split of authority, the Court concluded that the relief sought—a process for immediate evaluation of the prisoners for home confinement or compassionate relief and enlargement—was not legally cognizable as a habeas claim. (First TRO Order at 14).

In this Supplemental TRO Application, Petitioners seek the same relief sought in the First TRO Application (the process relief) as well as an order requiring improved conditions through their second claim directly under the Eighth Amendment. (Supplemental TRO Application at 7).

As the Court noted in its prior order, it is recognized that prisoners have an Eighth Amendment right to certain minimal conditions in prison and courts routinely

adjudicate alleged violations of this right. However, Respondents argue that Respondents' claims are barred under the PLRA. Because the PLRA imposes certain procedural requirements that must be met before Petitioners can bring claims regarding the conditions of confinement, the Court first examines whether the PLRA bars both of Petitioners' claims.

**A. PLRA Requirements**

Respondents argue that the first relief is barred because Petitioners did not meet all the prerequisites that must be met before a court can issue a "prisoner release order." They further argue that both reliefs are barred because Petitioners have failed to exhaust their remedies. The Court examines these two arguments separately.

**1. Whether Petitioners Are Requesting A "Prisoner Release Order"**

The PLRA imposes strict prerequisites before a federal court may issue a "prisoner release order," which is broadly defined as "any order, including a temporary restraining order or preliminary injunctive relief, that has the purpose or effect of reducing or limiting the prison population, or that directs the release from or non-admission of prisoners to a prison." 18 U.S.C. § 3626(g)(4). Those prerequisites include the failure of some other, earlier-imposed remedy to address the deprivation of the federal right, reasonable amount of time for Respondents to comply with such orders, and the convening of a three-judge court, which is given the exclusive authority to enter a prison release order. *Id.* § 3626(a)(3)(A).

The parties appear to agree that Petitioners' ***second*** requested relief—an order requiring improvement of conditions at Terminal Island—does not constitute a "prisoner release order." (Supplemental TRO Application at 14; *see generally* Supplemental TRO Opposition). The Court agrees. An order requiring Respondents to improve the conditions of Terminal Island to mitigate the threat of COVID-19 does not have the purpose or effect of reducing or limiting the prison population or direct

the release of prisoners from prison. (*See* Complaint at 50-51 ("Relief Requested"); Supplemental TRO Application at 7).

However, the parties dispute whether Petitioners' ***first*** requested relief—a process for Respondents to conduct expedited review of home confinement or compassionate relief—constitutes a "prisoner release order." (Supplemental TRO Opposition at 8-11). Petitioners contend that this relief is not a prisoner release order because (1) the primary cause of the violation of Petitioners' federal rights is not crowding of Terminal Island, but rather the serious threat to their health and safety caused by Respondents' refusal to deploy and execute sufficient measures to stem COVID-19; and (2) they are not seeking a "release" from custody, but only an order requiring Respondents to exercise authority they already have to "maximize" transfers to home confinement. (Supplemental TRO Application at 14-15). Respondents dispute both positions. (Supplemental TRO Opposition at 8-11).

The Court does not find either of Petitioners' arguments to be persuasive:

***First***, Petitioners argue that they are not seeking a "prisoner release order" because they are not seeking a remedy for crowding. As Petitioners acknowledge, the PLRA broadly defines "prisoner release order" as any order "that has the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners from a prison." 18 U.S.C. § 3626(g)(4). Notably, this definition does not limit the scope of "prisoner release order" to those where crowding is the primary cause of a federal right violation.

Nonetheless, Petitioners argue that the Court should limit the definition of the term based on the legislative history, the statutory framework, and caselaw. As a preliminary matter, Petitioners argue that the "[s]ponsors of the PLRA were especially concerned with courts setting 'population caps' and ordering the release of inmates as a sanction for prison administrators' failure to comply with the terms of consent decrees designed to eliminate overcrowding." *Gilmore v. People of the State of California*, 220 F.3d 987, 999, n.14 (9th Cir. 2000). Therefore, Petitioners appear to suggest that Congress' intent in passing this provision of the PLRA was to limit a court's ability to

reduce or limit the prison population where overcrowding violated prisoners' rights. (Supplemental TRO Application at 13).

Furthermore, Petitioners argue that this is the only logical interpretation that the Court could reach if the statute is read as a whole. Specifically, Petitioners point to 18 U.S.C. § 3626(a)(3)(E), which lists one of the requirements that need to be met before a prisoner release order is issued. That provision requires that the "three-judge court shall enter a prisoner release order ***only if*** the court finds by clear and convincing evidence that—(i) ***crowding is the primary cause of the violation of a Federal right***; and (ii) no other relief will remedy the violation of the Federal right." 18 U.S.C. § 3626(a)(3)(E) (emphasis added). Because a court must find that crowding is the primary cause of the violation of a federal right before a prisoner release order could be issued, Petitioners argue that the PLRA limited the scope of prisoner release order to only those situations.

Lastly, Petitioners cite to *Plata v. Brown*, 427 F. Supp. 3d 1211 (N.D. Cal. 2013). There, a single judge ordered the California Department of Corrections and Rehabilitation "to transfer all inmates who are classified as 'high-risk'" of contracting infectious disease coccidioidomycosis (common referred to as Valley Fever) from two prisons that reported high rates of the disease. *Id.* at 1230. The defendants there argued that the court lacked authority to issue such an order under the PLRA because a "prisoner release order" could only be issued by a three-judge court. *Id.* at 1222. The court concluded that it was not issuing a "prisoner release order" because the plaintiffs were seeking "only transfer and not release." *Id.*

The *Plata* court further rejected the defendants' arguments based on general principles of statutory construction. *Id.* Looking at the statute as a whole, the court reasoned that the definition of "prisoner release order" must be read in conjunction with the requirements for entering one, including the provision which requires that a three-judge court determine that "crowding is the primary cause of the violation of a Federal right." *Id.* (citing 18 U.S.C. § 3626(a)(3)(E)).

Moreover, the court noted that "[a]lthough 'Congress is free to alter the standard that determines the scope of prospective relief for unconstitutional prison conditions,' it can do so only 'so long as the restrictions on the remedy do not prevent vindication of the right.'" *Id.*at 1223 (citing *Gilmore*, 220 F.3d at 1002-03). The court explained that "[i]t is easy to imagine circumstances – not caused by crowding – where a transfer would be necessary to protect inmates' constitutional rights: for example, if specialized medical care were not available at a particular prison, or if one or more inmates were illegally transferred in retaliation for exercising their First Amendment rights." *Id.* "In all of these cases, crowding would not be the cause (let alone the primary cause) of the constitutional violation, and adopting [the d]efendants' interpretation of 'prisoner release order' would thus prevent any court – single-judge or three-judge – from entering a transfer order." *Id.* Because "that would prevent vindication of the inmates' constitutional rights," the court concluded that the defendants' proposed interpretation of "prisoner release order" is impermissible. *Id.*

In their Opposition, Respondents argue that "nothing in the statutory language of the PLRA restricts its application to situations dealing with overcrowding." (Supplemental TRO Opposition at 10). However, they fail to engage with the concerns raised in *Plata*: namely, that this interpretation does not comport with the broader statutory framework and that it would prevent inmates from seeking judicial relief for constitutional violations, where crowding is not the primary cause of the violation. Respondents also do not cite any cases that support their interpretation.

In contrast, *Money v. Prizker*, a case that Respondents heavily rely on in another section of their brief, also noted that *Plata* reached the correct conclusion. No. 20-CV-2093, 2020 WL 1820660, at *12 (N.D. Ill. Apr. 10, 2020) ("[T]he judge [in *Plata*] rejected the notion that 'a court could only order that prisoners be transferred from one prison to another if overcrowding were the primary cause of the violation.' . . . That seems correct and consistent with the orders entered not infrequently in cases involving inmate medical problems that may require hospitalization."). The Court is persuaded the reasoning in *Plata* and *Money*, and concludes that the definition of "prisoner

release order" is limited to orders issued where crowding is the primary cause of the violation.

This conclusion does not end the inquiry, however, because the parties also dispute whether Petitioners are seeking relief based on crowding. Petitioners assert that the violation here is not based on crowding, but rather "the serious threat to their health and safety caused by Respondents' refusal to deploy and execute sufficient measures" to stem the spread of COVID-19. (Supplemental TRO Application at 15). Petitioners acknowledge that they have previously argued that Terminal Island suffers from a crowding problem, but they contend that the issue is Respondents' refusal to make use of the home confinement as directed despite the threat of COVID-19. (*Id.*). In response, Respondents argue that the Complaint belies Petitioners' argument. (Supplemental TRO Opposition at 10). They note that the Complaint repeatedly asserts that Terminal Island is "overcrowded." (*Id.*). They also argue that it is impossible to separate overcrowding from Petitioners' allegations that they cannot exercise social distancing. (*Id.*).

The Court agrees with Respondents. Despite Petitioners' reframing of their requested relief, the Court cannot ignore that crowding is central to their allegations and their requested relief. For example, the Complaint alleges that overcrowding is making social distancing impossible, and therefore, nothing short of a reduction in the prison population would alleviate the violation – which is why they are seeking Respondents to conduct an expedited review of home confinement and compassionate release. (*See e.g.*, Complaint ¶ 100 ("The profound and purposeful overcrowding Terminal Island ensures that effective social distancing is impossible, and it stymies Respondents' ability to follow and implement the CDC Interim Guidance and other viral-transmission prevention measures."); *Id.* ¶ 119 ("Petitioners contend that the fact of their confinement in prison itself amounts to an Eighth Amendment violation under these circumstances, and nothing short of an order ending their confinement at Terminal Island will alleviate that violation.")). Therefore, the Court determines that the primary cause of the constitutional violation – as to their first relief – is crowding. *Cf. Money*, 2020 WL 1820660, at *13 ("Plaintiffs also suggest that they do not seek a

remedy for crowding . . . . But that contradicts the allegations of their complaint and their entire theory of the case. One of the central allegations in the complaint is that inmates are particularly vulnerable because they live in 'congregate settings' in 'close quarters' with each other.").

***Second***, Petitioners argue that they are not seeking a "prisoner release order" because they are simply requesting a process for Respondents to maximize home confinement and compassionate release. This argument is not persuasive. As noted above, Petitioners repeatedly assert in their Complaint that the expedited evaluation for enlargement is necessary because effective mitigation of COVID-19 is not possible without a reduction of the prison population. Therefore, although Petitioners argue that they are not seeking "release" of prisoners, the allegations in the Complaint makes it evident that the ultimate purpose and effect of the relief is to reduce the population at Terminal Island.

In reaching this conclusion, the Court finds the reasoning in *Money* to be persuasive. There, the plaintiffs similarly argued that they are not seeking a release order, but rather a "process through which subclass members eligible for medical furlough will be identified and evaluated based on a balancing of public safety and public health needs, and transferred accordingly." 2020 WL 1820660, at *12. The court rejected this argument, concluding that "[t]here is no doubt that Plaintiffs' request – even if couched in terms of a process – would have the purpose and the effect of reducing the population in Illinois prisons." *Id.* The same reasoning applies here.

In sum, the Court agrees with Petitioners that the definition of "prisoner release order" is limited to an order that seeks to remedy a violation that is primarily caused by crowding in prison. Nonetheless, the Court determines that Petitioners' first relief is seeking a remedy to cure a problem primarily caused by crowding. Therefore, the Court concludes that the first requested relief is a "prisoner release order" that is subject to the prerequisites outlined in 18 U.S.C. § 3626(a)(3). Because it is undisputed that these prerequisites are not met, Petitioners' first relief is barred by the PLRA.

**2. PLRA Exhaustion**

Respondents additionally argue that Petitioners have failed to satisfy the PLRA's exhaustion requirements. (Supplemental TRO Opposition at 6). Because both parties incorporate their arguments from the First TRO Application, the Court references arguments made in the parties' briefs filed in relation to the previous application. (*See* First TRO Application (Docket No. 10); First TRO Opposition (Docket No. 24); First TRO Reply (Docket No. 30)).

Respondents raise issues regarding exhaustion regarding both requested reliefs. However, because the Court determines that the first requested relief is barred due to the PLRA prerequisites outlined above, the Court only examines their arguments regarding exhaustion for Petitioners' second requested relief.

The PLRA exhaustion requirement is mandatory. The statute explicitly states: "No action shall be brought with respect to prison conditions under . . . any . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

However, PLRA does not require exhaustion when circumstances render administrative remedies "unavailable." *See Ross v. Blake*, 136 S. Ct. 1850, 1858, (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."). "An administrative procedure is unavailable when (despite what regulations or guidance materials may promise)" (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use"; and (3) the prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-1860.

Here, Respondents assert that the Bureau of Prisons ("BOP") provides a four-tiered process for administrative resolution of inmate grievances. (First TRO Opposition) (citing 28 C.F.R. §§ 542.10-542.19). First, the inmate may seek informal resolution of any issue (via a BP-8 form). 28 C.F.R. § 542.13. If that fails, the inmate may file a formal request with the Warden (via a BP-9 form). *Id.* § 542.14. If the Warden denies a remedy, the inmate may then appeal to the BOP's Regional Director (via a BP-10 form), and then any adverse decision may be further appealed to the BOP's General Counsel in Washington, D.C. (via a BP-11 form). *Id.* § 542.15. A claim meets the exhaustion requirement when the appeal to the General Counsel reaches finality. *Id.* § 542.15(a).

It is undisputed that Petitioners have not met these exhaustion requirements. However, Petitioners assert that the administrative process is effectively unavailable because administrators are thwarting inmates from taking advantage of the grievance process. (First TRO Application 56). Petitioner Wilson asserts that case managers have not been accepting grievance forms. (*Id.*) He also asserts that he tried to submit three medical complaints to his case manager without receiving any response, and staff have claimed they are too busy with COVID-19 to deal with complaints. (*Id.*). Accordingly, Petitioners argue that prison administrators have thwarted prisoners from taking advantage of a grievance process. (*Id.*).

The Court agrees with Petitioners. Respondents fault Petitioners for not attempting to utilize the administrative process, and that had they done so, the BOP could have attempted to fix the problems. (First TRO Opposition at 32; Supplemental TRO Opposition at 7-8). However, Petitioners have provided evidence that the case managers are not accepting grievance forms and that the staff is not addressing their complaints. Therefore, based on the evidence in front of the Court, the Court determines that Petitioners attempted to pursue administrative remedies but were thwarted.

Respondents further argue that 28 C.F.R. § 542.18 offers prisoners an emergency procedure where certain emergency requests shall be responded by no later than the third calendar day of filing. (First TRO Opposition at 31-32; Supplemental

TRO Opposition at 7). However, the Court is not convinced Petitioners' second requested relief (for improvements in the prison conditions) would constitute such an emergency and Respondents did not provide any evidence that they would consider such a request as an emergency. In fact, it seems highly unlikely given that Petitioner Wilson asserts staff have claimed they are too busy with COVID-19 to deal with complaints and that case managers have ignored his repeated attempts to file a complaint. It is also not clear if Respondents instructed Petitioners that that is the correct avenue to file their grievances.

Accordingly, Petitioners have adequately demonstrated that Terminal Island's grievance procedure "operate[d] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," making the procedure effectively unavailable. Therefore, the Court concludes that exhaustion is not a bar to Petitioners' second requested relief seeking improvements to the conditions of confinement.

**B. Next Steps**

Because the PLRA does not bar Petitioners' second requested relief, the Court must examine whether Petitioners have sufficiently demonstrated the four *Winters* factors to warrant a temporary restraining order or a preliminary injunction. However, the Court determines that an independent site visit by a neutral inspector of FCI Terminal Island will inform the Court's determination on this matter. Therefore, the Court will reserve judgment on this issue until a neutral expert conducts a site visit of the facility and provides the Court with his or her findings.

It appears that the parties have not been able to agree on the expert who would conduct the site visit of FCI Terminal Island. Petitioners have submitted the names of two experts, who have indicated their availability and willingness to serve as an expert to perform a site visit at Terminal Island. (Docket No. 53). Respondents have submitted the name of one expert. (Docket No. 54). Having reviewed the CV and background of all three experts, the Court finds that all three experts are well-qualified and would be excellent candidates to conduct the site visit. Nonetheless, the Court

determines that **Dr. Michael Rowe** would be best qualified to perform the site visit based on his background and experience.

Therefore, Dr. Rowe is **APPOINTED** as an expert under Federal Rule of Evidence 706. The parties are **ORDERED** to schedule a site visit at FCI Terminal Island, which will be conducted by Dr. Michael Rowe, by no later than **August 3, 2020**. Dr. Rowe to submit a report of his findings by no later than **August 24, 2020**. The parties may agree on other dates without seeking a stipulation from the Court.

## III. CONCLUSION

The Supplemental TRO Application is **DENIED *in part***. The Supplemental TRO Application is denied as to Petitioners' first claim for relief because it is a "prisoner release order," which is subject to PLRA requirements. However, the Court determines that the second claim for relief is not barred by the PLRA. Before ruling on whether a temporary restraining order or a preliminary injunction is warranted on this second claim, the Court orders Dr. Michael Rowe to perform a site visit at FCI Terminal Island and submit a report of his findings.

IT IS SO ORDERED.